## Commonwealth ex rel. Graham (to use of Markham et al., Appellants) *v.* Schmid.

Argued October 5, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Harold F. Mook,* with him *Russell M. Orcutt, O. J. Graham, Elmer L. Evans, J. S. Jiuliante, Emmett C. Wilson, H. Stewart Dunn* and *Al. J. Kane,* for appellants.

*Wm. B. Washabaugh, Jr.*, with him *David S. Gifford* and *Edward M. Murphy*, City Solicitor, for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, December 12, 1938:

This appeal raises the constitutionality of preferences given to war veterans under the civil service provisions in the Third Class City Law, enacted June 23, 1931, P. L. 932.[1] The City of Erie examined applicants for the

---

[1] Section 4401 requires building inspectors and certain other employees to pass an examination to determine their qualifications before being appointed. Section 4406 provides for an eligible list to be composed of those successfully passing the examinations. From the highest four on this list the appointee is to be selected. Honorably discharged war veterans under section 4405 are to be *"marked or graded fifteen per centum perfect before the quality or contents of the examination shall be considered."*

Section 4405 reads as follows:

"When any person who was engaged in the military or naval service of the United States during any war in which the United States engaged, and has an honorable discharge therefrom, shall take any examination for appointment or promotion, his examination shall be marked or graded fifteen per centum perfect before the quality or contents of the examination shall be considered. When the examination of any such person is completed and graded, such grading or percentage as the examination merits shall be added to the aforesaid fifteen per centum and such total mark or grade shall represent the final grade or classification of such person and shall determine his or her order of standing on the eligible list."

This section in effect provides a passing grade for veterans lower than that for non-veterans.

Under section 4407, any war veteran whose name appears in the top four *"shall* be" preferred and "preference *may* be given" to any war veteran on the eligible list, even though not of the highest four. Section 4407 reads:

". . . Among those persons possessing qualifications and eligibility for appointment, preference in appointment *shall* be given to honorably discharged soldiers and sailors who served in the Army or Navy of the United States during time of war: Provided, That preference *may* be given, by the appointing power, to all honorable discharged soldiers, sailors and marines, who served in the

position of assistant building inspector. Fifteen were reported as having successfully passed the examination, and the names of the four highest were certified to the city council. Appellee, not a war veteran but highest on the list, was selected. The two use-appellants, both war veterans, instituted quo warranto proceedings to oust him for the reason that there was a mandatory preference in the law in their behalf.[2] The court below held the fifteen per cent advance credit proper, but declared the mandatory provisions of Section 4407 preferring war veterans unconstitutional as an invasion of Article III, Section 7, prohibiting laws granting special or exclusive privileges or immunities to any individual, and the veterans were not entitled to oust the appointee.

Preferences for war veterans in public employment have been widely enacted. This state has not been remiss in according this recognition, and the Third Class City Law is merely an instance of the many laws adopted.[3] This Court has not passed on the validity of

Army or Navy of the United States during times of war, who have passed the required civil service examinations, notwithstanding the fact that the names of such soldiers, sailors and marines may not be among the four names standing highest upon the eligible lists as ·hereinbefore provided. Such appointments of soldiers, sailors and marines may be made without regard to any age limitations now provided for by law or the rules and regulations of any board or commission having in charge civil service regulations in any county, city, or borough. . . ." (Italics added.)

[2] The final grades of the four certified applicants were as follows:

Joseph A. Schmid, the appellee .................. 94.2
James J. Leach, one of the veterans .............. 92.4
Carl Wilhelm, a nonwar veteran ................. 83.4
Stephen P. Markham, the other veteran .......... 83.0

Without the fifteen per cent credit allowed by section 4405, however, Leach's grade was actually only 77.4 and Markham's only 68.0, two points below the passing grade of 70.0.

[3] Prior to the World War the Act of May 19, 1887, P. L. 132, section 1, provided that Civil War veterans *who possessed the requisite qualifications* were to be preferred in public positions

these acts, but other jurisdictions have considered similar statutes from a constitutional viewpoint. Generally speaking, the laws have been sustained, but only if they prescribe that the veteran possess the minimum

throughout the state. The Civil Service Act of March 5, 1906, P. L. 83, giving veterans and their families preference, related to first class cities. See *Wood v. Philadelphia,* 46 Pa. Superior Ct. 573, later discussed. Section 3 of the Act of June 12, 1919, P. L. 444, gave a preference to veterans in all municipal employment who had passed the examination, though they were not of the highest four eligible. This was repealed as to third class cities by the Act of 1931, here involved. There was also an Act of July 16, 1917, P. L. 1002, section 5, which gave a preference to war veterans for positions in the engineering departments in third class cities, but this was repealed. The Act of May 11, 1923, P. L. 203, No. 150, sections 1, 2, gave war, veterans a fifteen per cent credit in examinations for experience and training derived from military service. This was likewise repealed as to third class cities by the Act of 1931.

Separate legislation has been passed as to first, second and third class cities. As to cities of the first class, the Act of June 25, 1919, P. L. 581, article XIX, section 14, provided that honorably discharged service men should be given full credit for the experience gained in the service. As to cities of the second class, *where persons possess equal qualification and are eligible for appointment,* preference is given to Civil and World War veterans: Acts of May 23, 1907, P. L. 206, section 1; May 8, 1919, P. L. 118, section 1. The Act of 1931, for third class cities, partially repeals the Acts of 1919 and 1923.

The civil service provisions relating to employees of the Liquor Control Board, the Housing Board, the Unemployment Compensation Board, and the Department of Public Assistance all give to veterans a percentage bonus in aid of their standing upon the list of eligibles. The Acts of July 18, 1935, P. L. 1246, section 301, as amended June 16, 1937, P. L. 1762, section 1 (Liquor Control); Act of June 5, 1937, P. L. 1705, section 19 (Housing); Act of December 5, 1936, P. L. 2897 (Special Session), as amended May 18, 1937, P. L. 658, section 2 (Unemployment Compensation); Act of April 9, 1929, P. L. 177, as amended June 24, 1937, P. L. 2003, section 3 (Public Assistance). Under each of these acts *veterans have a five per cent credit, and disabled veterans an additional five per cent.*

qualifications necessary to the discharge of the public duties involved. Although the subject of preferences is not discussed elaborately, the results are clear and consistent. These preferences have been considered by the courts under constitutional prohibitions against special privileges and unreasonable classification, and while the constitutional provisions differ somewhat in the various jurisdictions, they are similar in that all permit reasonable classifications and prohibit unreasonable ones and arbitrary privileges.

The underlying principle in all cases is that the veteran must possess the minimum qualifications to perform the duties involved. Some states so provide by law; in others the courts have read into the statutes this proviso so as to be consistent with constitutional requirements. Where such qualifications are not provided for it is generally held that the law violates constitutional inhibitions, since the preference for veterans is commanded regardless of ability. The theory on which the cases are decided is that, while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties. Public policy, as well as constitutional restrictions, prohibits an unrestrained preference as it does a preference credit based on factors not representative of true value.

As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential. The fact that veterans, either through voluntary enlistment or conscription, have been to wars for the preservation of their country should be given some

consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration. Where the preferences reasonably and fairly appraise these advantages, there can be no question of illegal classification and arbitrary privilege. But, on the other hand, where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary. Public policy demands such a rule of law. It is essential to the administration of public affairs that governmental employees be selected on the basis of their ability to perform the duties imposed upon them in an efficient manner, and if public servants are not selected on this basis, the appointing power violates its oath of office; where the legislature so provides, it offends the constitutional mandate.

In the cases considering preferences, the various statutes fall into groups or types. Some give preferences to veterans where the position does not require an examination. In these cases, the positions not being in the civil service class, statutes providing a preference for war veterans in the discretion of the appointive power, or where they possess reasonable qualifications, or equal qualifications with other candidates for the same position, have been held proper. Many statutes were enacted after the Civil War providing that veterans should be preferred for public position. Some of these statutes expressly required that the veteran be preferred only if reasonably qualified to discharge the duties involved. See *Spang v. Roper*, 13 Fed. Supp. 840, reversed on other grounds in *Gossnell v. Spang*, 84 F. (2d) 889; *Phelps v. Byrne*, 36 S. D. 369, 154 N. W. 825. The federal statute used the words "if qualified to perform the duties required." The South Dakota statute provided that Civil War veterans must possess the "requisite qualifica-

tions and business capacity necessary to discharge the duties of the position involved." Other statutes expressly provided that veterans were to be preferred only over non-veterans possessing equal qualifications. In such a case, of course, the veteran's qualifications were superior' because of his military and public training. See *Shaw v. City Council of Marshalltown,* 131 Iowa 128, 104 N. W. 1121; *Goodrich v. Mitchell,* 68 Kans. 765, 75 Pac. 1034.

Other statutes, though ostensibly mandatory and not expressly requiring that veterans be equally qualified with other candidates or at least reasonably qualified to handle the position, have been held constitutional by construing them to contain the implied condition that the preferred veterans be qualified to do the work in a reasonably efficient manner. See *State v. Empie,* 164 Minn. 14, 204 N. W. 572, and also *Platt v. Prince,* 167 Atl. 540 (R. I.), where the court held that, despite the words "shall be preferred," the appointing official retained discretion in making appointments, the statute merely giving "a certain preference." In all these cases the courts found, though mandatory words were used, the implied condition that the veteran must possess reasonable qualifications for the position.

Another class of cases deals with civil service requirements creating varying types of preferences, such as: an absolute or discretionary preference regardless of standing on the list if a passing grade has been obtained; complete exemption from examinations required of non-veterans; giving veterans additional points or percentage credits in determining a passing grade, or the equivalent, lowering the passing grade for veterans; and, finally, giving added points when the veteran has passed the examination at the regular passing grade and is thus placed on the eligible list.

When civil service systems were adopted, preferences similar to those under non-civil service systems found their way into the statutes. Most of them made eligibil-

ity for positions depend primarily upon the passing of
civil service examinations. Preferences were of the
varying kinds described, with the minimum require-
ment generally that the veteran pass the examination
at the regular passing grade.

There seems to be no question in other states that
where a statute provides that a veteran who passes an
examination shall be preferred, the legislature has acted
constitutionally. In an elaborate opinion the Supreme
Judicial Court of Massachusetts held that, under a stat-
ute providing for such a mandatory preference, involv-
ing no considerations other than the passage of an ex-
amination, it was proper to prefer the veterans. The
court pointed out that the passage of the examination
was equivalent to establishment of the qualifications
necessary for the position: *Opinion of the Justices*, 166
Mass. 589, 44 N. E. 625. The reasoning of the Minne-
sota court in *State v. McDonald*, 188 Minn. 157, 246
N. W. 900, is similar. Statutes which provide that vet-
erans are to receive top listing on eligible lists of those
passing examinations are not distinguishable. Constru-
ing various constitutional provisions, the Massachusetts
Court upheld such a statute in *Mayor of Lynn v. Com-
missioner of Civil Service*, 269 Mass. 410, 169 N. E. 502.
A similar view was taken in *State v. City of Seattle*, 134
Wash. 360, 235 Pac. 968, where top listing was upheld
on the ground that passage of the examinations made all
candidates "equally qualified." In California a statute
which provided that all ties were to be resolved in favor
of veterans was assumed constitutional; due allowance
was there made for military service. See *Jones v.
O'Toole*, 190 Cal. 252, 212 Pac. 9.

Other courts have held, despite the mandatory lan-
guage of the statutes, that the appointing power had
discretion, after passage of examinations, in appointing
to civil service positions; on this basis they were con-
stitutional. In New Jersey, notwithstanding the words
"shall be preferred" expressly used by the legislature

(*Horowitz v. Civil Service Commission,* 12 N. J. Misc. 190, 170 Atl. 639, affirmed 112 N. J. L. 499, 171 Atl. 779), the court held that the appointing power, in rejecting a veteran who had passed the examination, for the reason that he was not competent for the position of court clerk, was validly exercising its discretion in appointing a non-veteran from the eligible list. The court did not recede from its position in *Jones v. Orlando,* 119 N. J. L. 227, 195 Atl. 717, where a subsequent statute stated that passage of the examination created a presumption of competency, and it was decided a veteran who passed the examination might be rejected for deficiencies not disclosed by the examination. Other statutes expressly give the appointing power freedom from the mandatory choice of veterans who pass examinations, and require the business capacity necessary for the proper discharge of duty. See *People v. Brady,* 262 Ill. 578, 105 N. E. 1, where the statute was sustained in the face of constitutional provisions against class legislation. An Iowa statute gives preference "over other applicants of no greater qualifications"; discretion in appointment of veterans or non-veterans is thus allowed. See *Lyon v. Civil Service Commission,* 203 Ia. 1203, 212 N. W. 579.

Our conclusion from these decisions is that, so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory. In either case the minimum qualification for appointment is success in an examination. Its passage satisfies the requirement that appointments of public employees be made only of persons reasonably fitted for the position.

There can be no objection to the provision of section 4407 which *permits* a preference of any veteran on the eligible list. The provision that those in the first four of the eligible list *shall be preferred,* appearing in the same section, must, however, be construed to be manda-

tory, with the exception that the appointing power need not select such veteran if it is found on a fair basis that he is morally or physically unfit to be employed. Thus construed it is constitutional under all the cases which have been cited. In none of those was a mandatory preference for veterans who had passed the examination held unconstitutional.

But statutes completely exempting veterans from taking the customary examinations for civil service positions have been ordinarily held unconstitutional since they do not require that the appointees be fit for the position. See *Brown v. Russell,* 166 Mass. 14, 43 N. E. 1005. In New York, though preferences for veterans have been written into the constitution, nevertheless they have been construed against appointment without examination. See *Matter of Keymer,* 148 N. Y. 219, 42 N. E. 667. In *Barthelmess v. Cukor,* 231 N. Y. 435, 132 N. E. 140, the constitutional provision requiring competitive examinations except as to Civil War veterans was strictly construed not to include World War veterans. The statute attempting to give such a preference was held unconstitutional, although the opinion pointed out that, had the legislature merely tried to credit the military service as experience, it might have been proper. In *Wood v. Philadelphia,* 46 Pa. Superior Ct. 573, above referred to, the Superior Court had before it a statute exempting not only war veterans but also their widows and children from taking examinations for civil service positions in first class cities. The court states, at page 579, "we are at a loss to discover any substantial grounds upon which such classification may rest."

There is an exception to this rule against exemption from examination where the statute is not mandatory but merely discretionary in permitting such appointment, and where the nature of the position is such that it does not require an examination to establish qualification; in that event the preference given veterans is not

interdicted. See *Opinion of the Justices,* 166 Mass. 589, 44 N. E. 625.

A provision granting veterans a lower passing grade than other candidates, or, what is an equivalent provision, a credit to veterans of a specific number of points aiding them in passing an examination, is in parity with exemption from examination; these provisions will be held unconstitutional as not providing a reasonable relation between the value of military training and its appraisal in public employment. They give undue weight to military service and violate the constitutional provisions against class legislation and special privilege. It was argued in *Cook v. Mason,* 103 Cal. App. 6, 283 Pac. 891, that the statute requiring of veterans five points less than the regular passing grade violated the special privilege clause of the constitution. While the court found it unnecessary to pass on this five point difference, it was strongly intimated that such a preference was bad. In *State v. McDonald,* 188 Minn. 157, 246 N. W. 900, although the statute involved did not contain such a provision, the court expressly stated that if the legislature had provided a passing grade for veterans lower than that for non-veterans it would have violated the state constitution.

In several jurisdictions the statutes have provided for a credit of a specific number of points to veterans *who pass the examination,* which credit aids their order or standing in the eligible lists. These statutes are, of course, distinguishable. Their propriety rests on their reasonableness. In *Jones v. O'Toole,* supra, such a credit of five points was allowed and despite its mandatory character was assumed to be constitutional. In *State v. Emmons,* 128 Ohio St. 216, 190 N. E. 468, 47 Ohio App. 348, 191 N. E. 880, a percentage credit of the total grade obtained was allowed by the statute to veterans who had passed the examination.

It therefore clearly appears that the decisions of other states condemn the provision of section 4405 giving fif-

teen per cent credit in advance to veterans as unconstitutional. It is not distinguishable from a statute which would allow a fifteen per cent lower passing grade for veterans. It gives undue weight to the military and public experience of the veterans and in that way constitutes a special and exclusive privilege. Moreover, the legislature has itself condemned the classification. It has enacted laws giving veterans a credit of five per cent in civil service examinations for employment in the state agencies referred to above, while in cities of the third class, fifteen per cent is given. There is no reason for this difference. We do not hold that no credit can be given to veterans *who have passed examinations* in addition to the preference when on the eligible list, but the present grading is given to those who do not pass the examination.

Since the fifteen per cent credit of section 4405 is improper, that credit must be deducted from the final grade given to the veterans. As the record now discloses, with this deduction Leach is the only veteran whose name appears on the eligible list of those who passed, and on the certified top four, and unless cause appear to the contrary, as here indicated, he would be entitled to appointment. We do not pass on the age and other provisions of the act. The preference feature is otherwise sustained as constitutional, while the fifteen per cent provision is held illegal.

The decree is reversed and it is directed that judgment be entered in favor of the Commonwealth and that Joseph A. Schmid be and is hereby ousted and excluded from the office of Assistant Building Inspector of the City of Erie and the City Council is directed to appoint James J. Leach, appellant veteran, to that office unless cause be shown, as indicated, why he should not be appointed. Costs to be paid by appellee.