## Commonwealth ex rel. v. O'Leary et al.

*Charles D. Coll* and *Charles B. Prichard,* for use-plaintiffs.

*John M. Walker,* for defendant.

SOFFEL, J., November 16, 1942.—This case is before the court on a suggestion in quo warranto made on the relation of the District Attorney of Allegheny County for the use of Manus J. Johnston, Leonard C. Spruce, Lawrence R. Keating, James J. McIntyre, George W. Lacky, Ferdinand J. Stehle, and all other members and employes of the Bureau of Fire, Department of Public Safety, of the City of Pittsburgh in like situation who may elect to join in these proceedings as use-plaintiffs, to oust Thomas E. O'Leary, Joseph R. Horne, George L. Hanna, William H. Andrews, Joseph McCall, William A. Ostermeyer, William M. Bell, and Harry H. Brown, defendants and incumbents of the position and office of captain in the Bureau of Fire, Department of Public Safety, City of Pittsburgh.

In answer to the writ of quo warranto and suggestion, defendants filed an answer admitting the allegations of fact set forth in the suggestion, but denying the conclusions of law.

Involved is a consideration of the Act of August 5, 1941, P. L. 872, 51 PS §§491-6 et seq.—the Veterans' Preference Act—which provides for and requires pref-

erential appointment to public positions by the Commonwealth and its political subdivisions of honorably discharged persons who served in the military or naval service during any war in which the United States was engaged.

As admitted, the facts of the instant case may be briefly stated as follows:

On September 22, 1940, and for more than five years prior thereto and at all times since, the use-plaintiffs and defendants were members and employes in the uniformed ranks of the bureau of fire holding positions in the competitive class therein and in grades lower than the grade of captain. Each had taken a competitive examination for original appointment to a position in a competitive class in said bureau of fire, had passed same and earned a place on a proper eligible list, and had been duly, regularly, and legally appointed to their respective positions.

Sometime prior to September 22, 1940, the civil service commission, in conformity to the law, held a competitive promotional examination to establish an eligible list for appointments and promotions to fill vacancies in the position and office of captain of said bureau of fire. All the use-plaintiffs and defendants, and a large number of other members and employes of the bureau of fire, proceeded to take said examination. The rules of the civil service commission provide, inter alia, for a promotional examination and an eligible list containing the names of those who had participated in the examination and who had attained a final average rating of 75 percent. One hundred and seventeen participated in said examination, attained the final average of 75 percent, and earned the right to have their names placed on a resultant eligible list for promotional appointment to the office or position of captain of the bureau of fire. The use-plaintiffs and the said defendants were included in the 117. Of the 117 persons, 46, including defendants, were soldiers within

the meaning of the word "soldier" as defined in the Act of June 27, 1939, P. L. 1198, and the Act of August 5, 1941, P. L. 872. Seventy-one were not soldiers, within the meaning of said acts. None of the use-plaintiffs is a soldier.

On and for some time prior to June 18, 1942, there existed in said bureau of fire five vacancies among the positions and offices of captain. In order to fill said vacancies Director George E. Fairley of the Department of Public Safety of the City of Pittsburgh notified the civil service commission that the vacancies existed and that he desired to fill same, and requested the commission to certify to him eligibles for the purpose of promotion. The civil service commission thereupon certified to said director the entire list consisting of 117 names, including the names of all the use-plaintiffs and all the said defendants. Immediately upon receipt of said certified list of eligibles the director selected from said list the names of Thomas E. O'Leary, Joseph R. Horne, George L. Hanna, William H. Andrews, and Joseph McCall, defendants above named, and promoted each of them to a position of captain in the bureau of fire, effective June 19, 1942. He then reported his said action to the civil service commission. The said five defendants thereupon entered upon the performance of the duties of the office and position of captain in the bureau of fire and have continued in said employment up to the present time.

On and for some time prior to June 29, 1942, there existed in the bureau of fire three additional vacancies among the positions and offices of captain. Desiring to fill the same, the director notified the civil service commission of the vacancies and obtained a list of eligibles. The civil service commission certified to said director the entire appropriate eligible list then consisting of 112 names, said list including the names of all the use-plaintiffs and the three other defendants herein, to wit, William Ostermeyer, William M. Bell, and

Harry H. Brown. The civil service commission identified the names of 41 persons on said list as "soldiers" as defined by the aforesaid acts of assembly. Immediately upon the receipt of said certified list of eligibles the director selected from said list William Ostermeyer, William M. Bell, and Harry H. Brown, who have since been promoted to the position of captain in said bureau of fire, effective July 1, 1942. Said defendants entered upon the performance of their duties as of July 1, 1942, and have been employed up to and including the present time.

Paragraph 15 of the suggestion in quo warranto contains the following allegations of fact which are vital in the instant case:

Said attempted appointments and promotions of said defendants to the offices and positions of captain in said bureau of fire were and are, and each of them was and is, unlawful, illegal, null, void and of no effect, and said defendants were not, and none of them was legally appointed to said office and position of captain in said bureau of fire for the following reasons:

(*a*) In attempting to make said appointment and promotions and each of them, said director acted upon the mistaken and erroneous advice and belief that said Act of 1939 and the Act of 1941 limited the free choice of him as the appointing officer to persons whose names appeared on said eligible lists who were "soldiers" within the meaning of said acts and prohibited his even considering any other person whose name is upon said eligible lists but who is not a "soldier" within the meaning of said acts.

(*b*) Said director failed, refused and omitted to consider for appointment and promotion all the persons whose names appeared upon said eligible list who were not "soldiers" within the meaning of said act.

(*c*) Said director considered for appointment and promotion only those persons whose names appeared

upon said eligible list who were "soldiers" within the meaning of said acts.

(d) Said director failed, refused and omitted to consider for appointment and promotion the use-plaintiffs or any of them.

(e) In making said selections from said eligible lists said director did not act with sole reference to the relative fitness and merit of all the persons whose names appeared upon said eligible lists and said selections were not based upon merit ascertained by tests provided by said civil service commission and/or upon the superior qualifications of the persons so attempted to be appointed and promoted as shown by their previous services and experience.

(f) In making said selections, said director ignored and violated the legal and constitutional rights of the use-plaintiffs and of all other persons whose names appeared upon said eligible lists who were not "soldiers" within the meaning of said acts.

In answer to paragraph 15 of said suggestion, defendants have replied as follows:

"The allegations contained in paragraph 15 are denied as conclusions of law."

At the argument before the court en banc it was admitted that there was no denial of the facts as here alleged.

It is the contention of counsel for the use-plaintiffs that the director of the department of public safety has improperly construed the Act of 1941, cited supra, in that he considered for promotion only those persons whose names were identified upon the eligible list as "soldiers", and refused and omitted to consider for appointment and promotion the use-plaintiffs, or any other individuals who were not soldiers.

The issue for determination thus becomes a narrow question of law. Basically it is this: Did the director of the Department of Public Safety of the City of Pittsburgh properly construe and interpret the Act

of 1941? Was it mandatory that he give preference to soldiers whose names appeared on the promotional list certified as the result of a civil service examination, and thus exclude from any and all consideration every other person whose name appeared on such list as eligible for promotion, but who was not a soldier?

Thus it becomes necessary to consider the Act of August 5, 1941, P. L. 872, 51 PS §§491-6.

[The court here quoted the act in full.]

Counsel for the use-plaintiffs argue that the construction of the act adopted by the director of the department of public safety was improper and should be overruled by the court. It is their contention that, if said construction is sustained, then the act of assembly is unconstitutional.

It is the position of counsel for defendants that it is mandatory for the director of the department of public safety to give preference to a soldier and that this of necessity implies the exclusion of any other person who may be on the eligible list.

The section of the act important to this discussion is section 4. An analysis of this section reveals that it falls into three divisions:

The first paragraph deals with appointment or promotion to public office where no civil service examination is required. In making such appointment or promotion whenever a soldier possesses the requisite qualifications, the appointing power is required to give preference to such soldier.

The second paragraph deals with appointment or promotion where a civil service examination is required. If a soldier possesses the requisite qualifications and his name appears on the eligible or promotional list certified, the appointing power is required to give preference to such soldier notwithstanding that he is not the highest on the list.

The third paragraph deals with appointment or promotion to public office where a civil service exami-

nation is required but where the name of a soldier who has passed the required examination for appointment or promotion and who possesses the requisite qualifications does not appear on the eligible or promotional list. In such case the promotional power may give preference to the soldier who has thus passed the required examination.

In a recent opinion dealing with the construction of veterans' preference law, given by Attorney General Reno, as reported in Preferential Treatment of War Veterans (No. 3), 45 D. & C. 311, the Attorney General pointed out that in the first paragraph of section 4 of the Act of 1941, in the selection of provisional employes for any position in the civil service of the Commonwealth where there are no eligible lists, since no civil service examination is required, if there is a veteran or more than one veteran available possessing the requisite qualifications, such veteran must be selected and appointed: The Attorney General held that the provisions of the second paragraph of section 4 are mandatory and that if only one veteran's name appeared on a certified list, as provided for in the second paragraph of section 4, he must be appointed. Citing formal opinion no. 320, the Attorney General pointed out that as long as the soldier on a fair basis possesses the requisite qualifications, that is, is morally and physically fit to be employed, he must be appointed to the position cited, even though he does not stand highest on the eligible list certified as a result of the civil service examination; that if more than one veteran's name appears on such list there is discretionary power to make a selection among them. He went on then to point out that under the third paragraph of section 4 of the Veterans' Preference Act, supra, if there is no veteran among the highest on the certified list, but the veteran's name appears further down on the eligible list, the appointing authority may, at its discretion, appoint the veteran.

Statutory preferential treatment of veterans in public employment in the Commonwealth of Pennsylvania is not a new departure. It has long been an established principle that men who have served their country faithfully during its wars should by virtue of said service be given recognition and preferential treatment in appointment to public office. This principle has been recognized by the Federal Government, the Commonwealth of Pennsylvania, and most other States of the Union. It is as ancient as civilization itself. For the most part said legislation has been sustained as constitutional.

In Commonwealth ex rel. v. Schmid, 333 Pa. 568, Mr. Justice Kephart has thus stated the basic principle of law which must be observed in veterans' preference legislation (p. 577):

"Our conclusion from these decisions is that, so long as the statute requires passage of the examination, a veteran may constitutionally be preferred over non-veterans whether the statute be mandatory or directory. In either case the minimum qualification for appointment is success in an examination. Its passage satisfies the requirement that appointments of public employees be made only of persons reasonably fitted for the position.

". . . The provision that those in the first four of the eligible list *shall be preferred*, appearing in the same section, must, however, be construed to be mandatory, with the exception that the appointing power need not select such veteran if it is found on a fair basis that he is morally or physically unfit to be employed."

For an historical review of said statutory preferential treatment of United States war veterans in public employment in the Commonwealth of Pennsylvania see opinion no. 320 of the Attorney General, found in Pennsylvania Official Opinions of the Attorney General (1939-40), at page 190, and particularly pages 192

to 198, and in Preferential Treatment of War Veterans (No. 2), 38 D. & C. 129.

In construing the Act of 1941 certain basic principles of statutory construction must be kept in mind. In Commonwealth v. Grossman, 248 Pa. 11, 14, the court pointed out the following principle of construction:

"In construing a statute the presumption is that it is a valid exercise of legislative power, and the burden is upon him who attacks it to show beyond all doubt that it offends some clearly expressed or necessarily implied prohibition of the Constitution. To doubt is to be resolved in favor of the validity of the legislation. There must be no conflict between the legislative and judicial departments of the government if it can be avoided, and while it is unquestionably the duty of the courts to declare invalid legislation violating the fundamental law, yet this will not be done, as is well settled, unless there is a clear violation of the Constitution, a clear usurpation of a power prohibited. The legislature is the sole judge of the wisdom and expediency of a statute, as well as of the necessity for its enactment, and whether the legislation be wise, expedient or necessary is without importance to the court in determining its constitutionality. In other words, the assembly has a free hand to legislate on every subject in such manner as it deems proper unless there is a constitutional prohibition clearly expressed or necessarily implied."

This principle is reiterated in the Statutory Construction Act of May 28, 1937, P. L. 1019, particularly sections 51 and 52, as follows:

"Section 51. Construction of Laws; Legislative Intent Controls.—The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions.

"When the words of a law are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."

"Section 52. Presumptions in Ascertaining Legislative Intent.—In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others: . . .

"(3) That the Legislature does not intend to violate the Constitution of the United States or of this Commonwealth; . . .

"(5) That the Legislature intends to favor the public interest as against any private interest."

It thus becomes apparent that the court is called upon to interpret and construe the statute in such a manner as to ascertain and effectuate the intent of the legislature. It is not the province of the court to pass upon the motive or wisdom of the legislature. The issue narrows down to this: What did the legislature mean when it said, in the second paragraph of section 4 of the Act of 1941, " . . . *the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding that his name does not stand highest on the eligible or promotional list"?* (Italics supplied.)

Do the words "shall give preference" connote the idea of exclusion? Is the individual soldier to have an exclusive right to promotion, and other employes, who have demonstrated their qualifications by passing the examination and who are on the eligible list, to be denied any and all consideration for promotion whenever the name of a soldier appears on the eligible list?

Under the admitted facts of the instant case the director of the department of public safety excluded from consideration persons whose names appeared on the eligible list who were not soldiers. This, in our judgment, he was required to do under the second paragraph of section 4 of the act here considered. The

language "shall give preference" is mandatory. So long as there were soldiers on the list who possessed the requisite qualifications and who had attained their position on said lists as a result of a civil service examination, the appointing or promoting power was required to give preference to such soldiers. The intent of the legislature to give preference to soldiers, under certain conditions, to the exclusion of others has been considered and sustained as constitutional by the Supreme Court in the able opinion of Mr. Justice Kephart in the case of Commonwealth ex rel. Graham v. Schmid, supra. The original, as well as the recent, opinion of the Attorney General confirms this construction. The only exception permitted is where a soldier is neither morally nor physically qualified. No such attack has been made on the soldiers here selected.

We realize the serious import of the instant case; that not only soldiers but thousands of public employes are concerned, and the public itself has a stake in this matter. Civil service acts have been adopted in this Commonwealth to establish a system whereby municipal employes shall be selected on the basis of qualifications. To achieve this, appointments and promotions are required to be made according to fitness ascertained as far as possible by competitive examination. The public is interested in recognizing the service of men and women who have served in the military, naval, and air services of the United States in time of war. That the experience and discipline which they have thus gained shall be properly recognized goes without saying. The public is also concerned in preserving the rights and promoting the general welfare of all citizens, whether veterans or non-veterans.

While in our judgment it might be better to define the word "preference" as connoting "comparison" rather than "exclusion," we are not permitted to substitute our judgment for that of the legislature, nor to question its wisdom. We are here simply called upon

to determine whether the construction and interpretation of the Act of 1941 as applied by the director of the department of public safety was proper. We are of the opinion that in selecting for promotion only veterans the director of the department of public safety was doing what under the Act of 1941 he is required to do. The exercise of such preference has been held to be constitutional.

### Order of court

And now, November 16, 1942, the writ of quo warranto is dismissed.

The costs are placed on the use-plaintiffs.