## McManus v. Borough of Columbia et al.

*W. Hensel Brown,* for petitioner.
*Henry M. Bruner,* for respondents.

WISSLER, J., April 6, 1944.—Eugene H. McManus filed a petition for a writ of alternative mandamus against the burgess, members of council, and the civil service commissioners of the Borough of Columbia,

Lancaster County, Pa., to which an answer was filed by the burgess, members of council, and the civil service commissioners, and a hearing had before this court upon said petition and answer. From the petition and answer and the notes of testimony it appears that Eugene H. McManus entered the service of the Borough of Columbia as chief of police on January 12, 1940, and served in said office until September 3, 1942, when he applied for a leave of absence by letter dated September 1, 1942, addressed to Mr. Lester V. Gram, Borough Secretary, Borough Council, Columbia, Pa., as follows:

"Dear Mr. Gram: Due to having entered the Armed Forces of the United States Government I respectfully ask for a leave of absence as Chief of Police of the Borough of Columbia for the duration of the war or a suitable time thereafter."

Thereupon, the Borough Council of Columbia granted him a leave of absence and appointed Harold Shortlidge, a member of the present police force, with the approval of the civil service board, as acting chief of police. On June 18, 1943, the said Eugene H. McManus was honorably discharged from the military service of the United States and on July 6, 1943, he directed a letter to council of the Borough of Columbia requesting a reinstatement to his former position as chief of police of the Borough of Columbia. This request was presented at the meeting of the borough council on July 8, 1943, and Eugene H. McManus, in person, made the request for reinstatement at a meeting of borough council on August 12, 1943, but borough council took no action to reinstate him at either of these two meetings and had taken no action on this request to the time of filing the petition.

The facts in this case present two questions for the court's determination: First, whether the Act of June 7, 1917, P. L. 600, as amended by the Acts of June 25, 1941, P. L. 207, April 21, 1942, P. L. 50, and May 6,

1942, P. L. 106, 65 PS §111, 112, which was declared unconstitutional by the Supreme Court of Pennsylvania in Kurtz v. City of Pittsburgh et al., 346 Pa. 362 (1943), with reference to dependency payments, is also unconstitutional with reference to the right of reinstatement of regular employes of the State and political subdivisions who have been granted a leave of absence, and, second, whether the request of petitioner for a leave of absence as chief of police of the Borough of Columbia for the duration of the war or a suitable time thereafter prevents him from now invoking the act and its amendments because he was honorably discharged before the end of the war.

As to the first question, it appears to the court that the act in question was declared unconstitutional only with reference to dependency payments. This is evidenced from footnote 2 of the opinion of Mr. Chief Justice Maxey in Kurtz v. City of Pittsburgh et al., supra, at page 364, in which it is stated that the part of the act in reference to the granting of leaves of absence to employes entering the service, with the right of reinstatement after their return, is not challenged, and also by the statement of Chief Justice Maxey at the end of the opinion, at page 386:

"The Act of June 7, 1917, P. L. 600, as amended . . . so far as this original act and these later amendatory acts provide for the payment to dependent wives and children of public employees in the armed services of the United States . . . are adjudged to be unconstitutional and void. . . ."

Likewise, Justice Linn, at page 398 of the dissenting opinion, in speaking of the statute, says: "The statute grants leave of absence during the period of military service and six months thereafter, a provision of the Act agreed to be valid."

The whole trend of the majority opinion declaring the act unconstitutional was the fact that it provided for the payment of compensation to the dependents of

public employes and not to the dependents of private employes and therefore was class legislation in violation of article III, sec. 7, of the State Constitution.

While it is true the act makes no provision that it shall be severable and if any part thereof shall be held to be unconstitutional the decision so holding shall not be construed to impair any other provision of the act, by the Statutory Construction Act of May 28, 1937, P. L. 1019, art. IV, sec. 55, 46 PS §555, "The provisions of every law shall be severable".

In Rieck-McJunkin Dairy Co. v. Milk Control Commission of Pennsylvania, 341 Pa. 153 (1941), it was held that the principle of severability is applicable even where valid and invalid provisions are contained in the same paragraph or section of the act, the only question being whether or not they are essentially and inseparably connected in substance.

Cooley, in his Constitutional Limitations (8th ed.), p. 362, states that it is a well-settled principle of law, "If, when the unconstitutional portion [of a statute] is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained. . . . If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other."

Section 1 of the Act of 1917 provides:

"Be it enacted, &c., That whenever any appointive officer or employe, regularly employed by the Commonwealth of Pennsylvania in its civil service, or by any department, bureau, commission, or office thereof, or by any county, municipality, township, or school district within the Commonwealth, shall in time of war or contemplated war enlist, enroll, or be drafted in the military or naval service of the United States, or any branch or unit thereof, he shall not be deemed or held to have

thereby resigned from or abandoned his said office or employment, nor shall he be removable therefrom during the period of his service, but the duties of his said office or employment shall, if there is no other person authorized by law to perform the powers and duties of such officer or employe during said period, be performed by a substitute, who shall be appointed by the same authority who appointed such officer or employe, if such authority shall deem the employment of such substitute necessary. Such substitute shall receive so much of the salary or wages attached to said office or employment as shall not be paid to the dependent or dependents of said officer or employe, as hereinafter provided, and such substitute may receive such further compensation, from appropriations made for that purpose or otherwise, as may be required, when added to the amount received under the provisions of this act, to constitute a reasonable compensation for his services, in the opinion of the authority appointing him."

Applying, then, the foregoing principles to said act, is the provision of section 1 of the act essentially and inseparably connected in substance with sections 2 and 3 of the act, which provide for the payment of compensation to the dependents of any officer or employe regularly employed by the Commonwealth of Pennsylvania in its civil service or by any county, municipality, township, etc., and declared unconstitutional in Kurtz v. City of Pittsburgh et al., supra, or is it complete in itself and capable of being executed in accordance with the apparent legislative intent wholly independent of sections 2 and 3, declared unconstitutional?

An act of the legislature is constitutional until it, or any part of it, is declared unconstitutional: Guzzy et al. v. Volpe Coal Co., 144 Pa. Superior Ct. 347 (1941).

Since section 1 of the act has not been declared unconstitutional, does the request of petitioner for a leave of absence as chief of police of the Borough of Colum-

bia for the duration of the war or a suitable time thereafter prevent him from now invoking section 1 of the Act of 1917, supra, because he was honorably discharged before the end of the war? To so hold would be to give it a narrow construction, since the act itself provides that by the enlistment in the military service of the United States of a public employe he shall not be deemed or held to have thereby resigned from or abandoned his office or employment or to be removable therefrom during the period of his service. That this was the intendment of the legislature is further evidenced by the Act of May 21, 1943, P. L. 492, which was adopted prior to petitioner's honorable discharge, to wit, June 18, 1943, providing for the temporary appointment of policemen in boroughs, etc., as follows:

"The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows: Section 1. That the councils of boroughs, incorporated towns and the township commissioners of townships of the first class, may fill vacancies or add to the police force during the duration of the war and six months thereafter, without regard to the requirements of any civil service act, such appointments to terminate six months after the end of the war, or sooner, if the men displaced are available and request reinstatement (in which case they shall be so reinstated) for duty, and shall confer no civil service status upon the appointees."

A similar view was taken by the Attorney General's office in an opinion to the Superintendent of Public Instruction, Retirement Payments by School Employes on Leave (No. 2), 48 D. & C. 47, holding that only those provisions of the Act of August 1, 1941, P. L. 744, contained in section 3 (c) thereof, providing for payments to dependents of State employes on leave in military service, are unconstitutional and void since the decision of the Supreme Court in Kurtz v. Pittsburgh et al.,

supra, but the provision as to the preservation of all benefits of the position of any employe of a school district is valid and effective where such an employe has been granted military leave of absence.

The history of the legislation of the State of Pennsylvania, as well as that of other States, has been to accord recognition to war veterans in public employment: Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568 (1938).

And now, April 6, 1944, the petition for alternative mandamus is sustained and it is ordered and decreed that the members of Council and the Department of Public Safety of the Borough of Columbia, Pa., reinstate the petitioner, Eugene H. McManus, as chief of police of the Bureau of Police of the Borough of Columbia. The costs shall be paid by the Borough of Columbia, Lancaster County, Pa.