# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott R. Blake,                          :
              Petitioner      :
                          :
            v.                    :   No. 724 C.D. 2015
                          :   Submitted: October 9, 2015
State Civil Service Commission,          :
              Respondent      :


BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[1]
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge


**OPINION BY JUDGE BROBSON**            **FILED: February 17, 2016**


Petitioner Scott R. Blake (Blake) petitions for review of an order of the State Civil Service Commission (Commission). The Commission rejected Blake's appeal of a determination by the Commission's Veteran's Preference and Certification Division, denying Blake a veteran's preference in his application for civil service employment. We reverse the Commission's order.

The Commission's pertinent factual findings are summarized as follows. On May 28, 2014, Blake submitted an application for either a "Special Investigator 1" or "Special Investigator 2" position. Blake claimed a veteran's preference on the application and, in response to a question regarding veteran's training, wrote that he attended the United States Military Academy at West Point

---

[1] This case was assigned to the opinion writer on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

from July 1991 through January 1993. He stated that during that period he completed forty-five credits, but he did not graduate.

During the two-month period from July through August 1991, Blake completed basic training at West Point. Blake indicated that, in exchange for attendance at West Point, a cadet must comply with a requirement to perform active duty military service upon graduation from West Point. In lieu of having to pay tuition, Blake testified, a cadet who is commissioned as a second lieutenant must perform active military service. A cadet who begins a third year at West Point must repay the value of tuition if he or she does not graduate, and, once a cadet begins the third year at West Point, he or she has an obligation to perform active duty service. Blake testified that a cadet who does not graduate may be required to enlist in the regular army.

Blake left West Point in 1993, prior to his third year. He testified that he performed no active duty military service after he left West Point. He also testified that the forty-five college credits he received from West Point were applied in satisfaction of the requirements for his bachelor's degree from the University at Albany, New York.[2]

After he received notice from the Commission that it would not honor his period at West Point for the purpose of a veteran's preference, Blake communicated with the Commission, asserting his belief that, based upon federal

---

[2] Blake's military records/discharge information, as reflected in his "DD Form 214" (which apparently is a discharge form), indicates the following pertinent information regarding the period during which Blake was at West Point: (1) his rank when he was discharged from West Point was "cadet;" (2) he did not have a command to which he was transferred; (3) his active "service" consists solely of the eighteen-month period he attended West Point; and (4) he received the "National Defense Service Medal." (Reproduced Record (R.R.) "Appendix D.")

2

statutory authority, the determination was erroneous. Pamela Yetter, a Commission Human Resource Analyst, responded by asking Blake to provide the Commission with a copy of his DD Form 214 that was more readable than the one he had included in his application. After Blake complied with that request, Ms. Yetter responded by indicating that the Commission's initial determination was correct. Ms. Yetter advised Blake that the federal provision upon which he relied had no bearing on Pennsylvania veteran's benefits or civil service employment and informed him that he had the right to appeal the determination. Blake communicated with Ms. Yetter again on August 13, 2014, reiterating his belief that the time he spent at West Point qualified him to receive the preferential hiring status accorded persons who have certain military experience, and he filed an appeal with the Commission.

Chairman Scott A. Rainey of the Commission conducted a hearing. The Commission, after considering the evidence, including the notes of testimony and exhibits, acknowledged that case law and state statutory provisions were not clear regarding the status of a person who has attended a United States military academy for a limited period of time. The Commission noted that the definitions contained in the Military and Veterans Code (Code)[3] do not specifically mention persons who attend military academies. The Commission also noted the key statutory provisions in the Code relating to veteran's preferences: (1) Section 7101 of the Code,[4] which defines the term "soldier" and includes the

_____

[3] 51 Pa. C.S. §§ 101-9701.

[4] 51 Pa. C.S. § 7101.

3

undefined term "active duty;" (2) Section 7102 of the Code,[5] which provides for awarding credit in civil service examinations to "soldiers;" and (3) Section 7104(b) of the Code,[6] which provides for the placement of a soldier's name at the top of an eligibility list for civil service positions. The Commission also referenced case law specifically addressing the characteristics of "active duty" service and "soldiers" and which involved individuals who were members of the National Guard or the United States Army Reserves. The Commission identified the key issue as whether the term "active duty," as used in Section 7101 of the Code to define the term "soldier," included persons such as Blake who attended but did not graduate from a service school such as West Point.

Instead of addressing that issue, the Commission concluded that Blake failed to overcome a constitutional prohibition barring the award of a veteran's preference, because the Commission could not find a "'reasonable relation' between '[Blake]'s particular service as a West Point cadet and the preference of

---

[5] 51 Pa. C.S. § 7102. Section 7102 of the Code provides, in pertinent part, that "[w]hen any *soldier* shall take any civil service . . . examination for a public position . . . he shall be given credit in the manner herein provided." (Emphasis added.)

[6] Section 7104(b) of the Code provides that

> [w]henever any *soldier* possesses the requisite qualifications, and his name appears on any eligible or promotional list . . . as the result of any such civil service examination, the appointing . . . power in making an appointment . . . shall give preference to such soldier, notwithstanding that his name does not stand highest on the eligible . . . list.

(Emphasis added.)

4

veterans for the proper performance of public duties.'"[7] (Adjudication at 14; quoting *Housing Authority of the County of Chester v. State Civil Service Commission*, 730 A.2d 935, 948 (Pa. 1999) (*Housing Authority*).)

As set forth in his brief, Blake's appeal consists of two primary arguments: (1) the Commission erred in failing to conclude that his eighteen-month period as a West Point cadet constituted the type of service that qualifies him as a soldier entitled to a veteran's preference; and (2) the Commission erred in concluding that the Constitution prohibits an award of a veteran's preference to Blake.

At the outset, we note that Blake's appeal to the Commission focused on a question of statutory construction, and Blake's primary argument here is that because the Code does not define the term "active duty," it is reasonable to apply the definition of "active duty" as set forth in Section 101(d)(1) of the federal Military Code, 10 U.S.C. § 101(d)(1).[8] As we mentioned above, rather than engaging in a thorough statutory construction analysis, the Commission proceeded to consider constitutional principles it believed were applicable to Blake's appeal. "[W]hen faced with a case raising constitutional and non-constitutional grounds, a court must decide the matter on non-constitutional grounds and avoid

---

[7] The Commission briefly reasoned that accepting Blake's interpretation of the pertinent statutory provisions would produce an absurd result. Thus, the Commission rejected Blake's arguments that the Code intended for persons who have completed basic training at a United States military academy and attended such academy for an eighteen-month period to be awarded a veteran's preference in the civil service appointment process. (Adjudication at 18.)

[8] Section 101(d)(1) of the Military Code defines the term "active duty," in pertinent part, as "full-time duty in the *active military service* of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school . . . ."

constitutional questions if possible." *Dauphin Cnty. Soc. Serv. for Children and Youth v. Dep't of Pub. Welfare*, 855 A.2d 159, 165 (Pa. Cmwlth. 2004). Indeed, in following that direction, when a case does not present a constitutional issue, the administrative agency should not create one. Accordingly, because an analysis of the statutory provision could negate the need to engage in a constitutional discussion, we will first consider whether Blake's tenure as a West Point Academy cadet falls within the definition of the term "soldier" in Section 7101 of the Code.

Section 7101 of the Code provides the following definition of the term "soldier:"

> As used in this chapter, "soldier" means *a person who served . . . in the armed forces of the United States*, or in any women's organization officially connected therewith, *during any war or armed conflict in which the United States engaged* and who was *released from active duty under honorable conditions*, *other than from periods of active duty for training*, or with an honorable discharge from such service . . . . Qualifying periods of service during a war or armed conflict, for purposes of this provision, will be designated by the Department of Military and Veterans Affairs.

Thus, the term "soldier" encompasses a person: (1) who served in the armed forces; (2) who served during a war or armed conflict in which the United States was engaged; (3) who was released from active duty under honorable conditions; and (4) whose active duty constituted more than active duty for training. In this matter, Blake contends that (1) his tenure at West Point constitutes service; (2) he attended West Point during a war or armed conflict—*i.e.*, the Persian Gulf War; (3) he was honorably discharged from West Point; and (4) his tenure while at West Point constituted "active duty" rather than "active duty for training." As alluded to above, Blake relies on the definition of "active duty," as set forth in Section

6

101(d)(1) of the Military Code, in support of his contention that his service while at West Point constituted "active duty" service. Based upon this reasoning, Blake contends that he qualifies as a "soldier" for purposes of the veteran's preference provisions in the Code.

The Commission argues that, contrary to Blake's position, we should not be bound by the definition in 10 U.S.C. § 101(d)(1), especially in light of the fact that Section 7109 of the Code[9] provides that the Code is the exclusive law pertaining to veteran's preferences. Moreover, the Commission asserts that the term "active duty" contained in the Code encompasses two components—military training and military service—which, the Commission argues, Blake's tenure at West Point fails to satisfy. The Commission bases this argument on Section 7102(a) of the Code, which, as we noted above, provides that soldiers are entitled to a veteran's preference "for the discipline and experience represented by his military *training* and for the loyalty and public spirit demonstrated by his *service* for the preservation of his country." (Emphasis added.) The Commission contends that Blake cannot claim to have performed any military *service* during his period at West Point. The Commission argues that these two requirements are reflected in the definition of the term "soldier" in Section 7101 of the Code by virtue of the distinction the General Assembly made therein regarding "active duty" and "active duty for training."

Because the General Assembly employed a term it failed to define— *i.e.*—"active duty," we are presented with a question of statutory construction. One of our rules of statutory construction provides that "[w]hen the words of a

---

[9] 51 Pa. C.S. § 7109.

7

statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters . . . the former law, if any, *including other statutes upon the same or similar subjects.*" 1 Pa. C.S. § 1921(c)(5) (emphasis added). It is apparent, therefore, that this Court may consider language that is used in federal statutory provisions of a similar nature to the veteran's preference provisions of the Code, especially if our General Assembly adopted such similar language after Congress adopted a federal counterpart.

The most similar federal statute this Court has found is a provision in Title 5 of the United States Code, which relates generally to government organization and employment, including civil service provisions. Section 2108 of Title 5 relates to "[v]eteran; disabled veteran; preference eligible." Included with the definitions in that provision is the term "veteran," which includes "an individual who . . . served on active duty as defined by section 101(21) of title 38 at any time in the armed forces during the period beginning on August 2, 1990, and ending on January 2, 1992."

Section 101 of Title 38 of the United States Code relates to veteran's benefits and provides the following definition to which the veteran's preference provision in Title 5 refers:

> (21) The term "active duty" means--
>
> . . . .
>
> (D) service as a cadet at the United States Military, Air Force, or Coast Guard Academy, or as a midshipman at the United States Naval Academy.

38 U.S.C. § 101(21)(D).[10]

As indicated above, Blake was a cadet, and, thus for the purposes of United States Code Title 38, he was on active duty. Moreover, he was on active duty between July 1991 and January 1993—a period recognized for veteran's preference purposes as satisfying the requirement to be a "veteran" under 5 U.S.C. § 2108(1).

The timing of the General Assembly's adoption of the term "active duty" provides some additional guidance. When the General Assembly first adopted a veteran's preference provision in 1945, the definition of the term "soldier," in relevant part, encompassed only persons "who served in the armed

---

[10] In contrast, for federal veteran's preference purposes, "active duty for training" means:

> (A) full-time duty in the Armed Forces performed by Reserves for training purposes;
>
> (B) full-time duty for training purposes performed as a commissioned officer of the Reserve Corps of the Public Health Service (i) on or after July 29, 1945, or (ii) before that date under circumstances affording entitlement to "full military benefits", or (iii) at any time, for the purposes of chapter 13 of this title;
>
> (C) in the case of members of the National Guard or Air National Guard of any State, full-time duty under section 316, 502, 503, 504, or 505 of title 32, or the prior corresponding provisions of law; and
>
> (D) duty performed by a member of a Senior Reserve Officers' Training Corps program when ordered to such duty for the purpose of training or a practice cruise under chapter 103 of title 10 for a period of not less than four weeks and which must be completed by the member before the member is commissioned.

38 U.S.C. § 101(22). This provision includes no minimum periods of time relative to such active service.

forces . . . during any war in which the United States was engaged, and who has an honorable discharge from such service."[11] The General Assembly did not alter this particular aspect of Section 7101 of the Code until 1975, when it changed the eligibility for a veteran's preference to include persons who have been released from "active duty under honorable conditions." In contrast to the 1975 shift in language by our General Assembly, our United States Congress enacted Section 101(21) of Title 38 of the United States Code on September 2, 1958. The language that includes cadets' service within the definition of "active duty" is the same now as it was then.

Because these provisions in Titles 5 and 38 of the United States Code, relating to veteran's preferences for federal civil service purposes, are the most similar federal statutes in comparison to the provisions of the Code at issue here, and because the key definitions found in the federal provisions predate our own present veteran's preference statutory definition, we believe that they provide the clearest support for our analysis—one which happens to favor Blake's argument.[12] Consequently, we interpret the term "active duty" for purposes of our Code to be

---

[11] Act of May 22, 1945, P.L. 837.

[12] As we mentioned above, Section 101(d)(1) of the United States Military Code (Military Code), 10 U.S.C. § 101(d)(1), upon which Blake relies, contains slightly different language defining the term "active duty" to mean "full-time duty in the *active military service* of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school . . . ." The identical expression "active military service" has been interpreted by the Court of Appeals for the Ninth Circuit, in the context of a retirement matter, to mean persons who have already been commissioned and attend service schools *after* receiving a commission. *Jacobs v. United States*, 680 F.2d 88, 89 n.2 (9th Cir. 1982). Thus, this definition is not helpful to Blake's position.

10

consistent with the definition of the term "active duty" as used in Title 38 of the United States Code, 38 U.S.C. § 101(21).

Although the Commission invokes the language in Section 7102(a) of the Code to support its conclusion that Blake is not a "soldier" under Section 7101 of the Code, we conclude that the language of Section 7101 of the Code, as more fully defined by reference to the federal statutory provisions, stands alone to support the conclusion that Blake was a soldier when he attended West Point.

While the preference provision set forth in Section 7102 of the Code, permitting such benefit for "soldiers" "for the discipline and experience represented by his military *training* and for the loyalty and public spirit demonstrated by his [or her] *service* for the preservation of his country," reveals the General Assembly's intent, we do not view that language as adding additional criteria to the definition of the term "soldier" in Section 7101 of the Code. In *Soberick v. Salisbury Township Civil Service Commission*, 874 A.2d 155 (Pa. Cmwlth. 2005), we recognized this point, noting that "[t]he plain language of the 'soldier' definition requires an individual serve in the armed forces and receive an honorable discharge from such service. 51 Pa. C.S. § 7101." *Soberick*, 874 A.2d at 158. Consequently, we conclude that the Commission erred and that Blake, who was honorably discharged by the United States Army, engaged in service that supports his claim that he is a soldier for the purpose of applying a veteran's preference.

We also conclude that, even if our statutory analysis had not resolved the matter before the Commission, the Commission's reliance upon the "reasonable relation" language from various Supreme Court decisions to conclude

11

that application of the veteran's preference was unconstitutional as applied to Blake was misplaced. In *Housing Authority*, our Supreme Court reviewed the constitutionality of Section 7104(b) of the Code, 51 Pa. C.S. § 7104(b).[13] The Philadelphia Housing Authority argued that Section 7104(b) unconstitutionally conferred a mandatory appointment preference upon veterans. The Supreme Court found guidance in its decision in *Graham v. Schmid*, 3 A.2d 701 (Pa. 1938), which involved a similar statutory provision. In *Schmid*, the Supreme Court concluded that as long as a statute requires candidates to pass a required civil service exam (establishing the candidate's actual ability to perform a job), a statute may provide a veteran a preference in appointment to a civil service position. *Schmid*, 3 A.2d at 703. In *Housing Authority*, the Supreme Court reaffirmed the principle set forth in *Schmid* that a statutory provision favoring a veteran in appointments was a reasonable legislative distinction, reflecting a rational foundation upon which to distinguish a veteran as a "superior candidate" for a position. *Housing Authority*, 730 A.2d at 949. The Supreme Court concluded that a "reasonable relation" must exist "between the basis of [a] preference [in the statute being challenged] and the object to be attained, the preference of veterans for the proper performance of public duties." *Id*. at 948.

In the decisions that followed, the Supreme Court considered other *facial* challenges to veteran's preference provisions, such as *Commonwealth v. O'Neill*, 83 A.2d 382 (Pa. 1951) (holding unconstitutional requirement that

---

[13] Section 7104(b) of the Code provides, in pertinent part, that "[w]henever any soldier possesses the requisite qualifications . . . the appointing or promoting power in making an appointment . . . to a public position shall give preference to such solider, notwithstanding that his name does not stand highest on the eligible . . . list."

veterans seeking *promotion* should receive ten-point examination increment).[14] Our Supreme Court's decisions, such as *O'Neill*, employing the "reasonable relationship" rationale appear to be limited to *facial* challenges to statutory provisions, rather than *as-applied* challenges to veteran's preferences.[15] Consequently, we conclude that the Commission erred in its constitutional analysis.

Accordingly, based upon our interpretation of Section 7101 of the Code, we reverse the Commission's order.

P. KEVIN BROBSON, Judge

---

[14] In *Hoffman v. Township of Whitehall*, 677 A.2d 1200 (Pa. 1996), our Supreme Court held unconstitutional the veteran's preference set forth in Section 7104(b) of the Code, as it pertains to promotions.

[15] In *Sicuro v. City of Pittsburgh*, 684 A.2d 232 (Pa. Cmwlth. 1996), we concluded that the City of Pittsburgh's practice of amending eligibility lists to provide veteran's preferences for persons who were not soldiers at the time they took their civil service examinations violated the Code. We made a reference to the Supreme Court's "reasonable relationship" language as used in *O'Neill* and *Schmid* and noted that the Supreme Court had recently upheld those decisions in *Hoffman*. Our decision in *Sicuro* was not grounded on the Supreme Court's reasoning in those cases, which, in contrast to *Sicuro*, involved facial challenges to statutory provisions.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Scott R. Blake,                           :
                Petitioner        :
                                  :
        v.                                :   No. 724 C.D. 2015
                                  :
State Civil Service Commission,           :
               Respondent       :

## O R D E R

AND NOW, this 17th day of February, 2016, the order of the State Civil Service Commission is REVERSED.

 

                                _____
                                  P. KEVIN BROBSON, Judge