

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-1995

# Markel v McIndoe

Precedential or Non-Precedential:

Docket 94-3152

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Markel v McIndoe" (1995). *1995 Decisions*. Paper 185.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/185

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NO. 94-3152
_____

WILLIAM S. MARKEL
Appellant

v.

HARRY R. MCINDOE; MUNICIPALITY OF PENN HILLS,
a municipal corporation
Appellees

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
D.C. No. 92-1551
_____

Argued:  September 20, 1994
_____

Before: BECKER and COWEN, Circuit Judges
and POLLAK, District Judge[*]

(Filed July 11, 1995)

Michael Louik, Esq. (Argued)
Berger, Kapetan, Meyers, Rosen,
  Louik & Raizman
200 Frick Building
Pittsburgh, PA  15219

                Attorney for Appellant

J. Alan Johnson, Esq.
Swensen, Peter & Johnson
Two PNC Plaza

_____

[*].  Honorable Louis H. Pollak, United States District Judge for
the Eastern District of Pennsylvania, sitting by designation.

Suite 2710
Pittsburgh, PA  15222
                    Attorney for Appellee
                    Harry R. McIndoe

Wayne V. DeLuca, Esq. (Argued)
Damian & DeLuca
816 5th Avenue
Pittsburgh, PA  15219
                    Attorney for Appellee
                    Municipality of Penn Hills

_____

OPINION OF THE COURT
_____

POLLAK, District Judge.


        This is an action brought pursuant to 42 U.S.C. § 1983
in which appellant alleged that he was denied opportunities for
promotion in violation of his First and Fourteenth Amendment
rights.  Appellees countered that the decisions to promote
persons other than appellant were made on the merits.
Subsequently appellees presented the additional contention that,
in any event, they were, as a matter of law, required by 51 Pa.
Cons. Stat. Ann. § 7104(b) — a section of Pennsylvania's
Veterans' Preference Act of August 1, 1975 — to promote eligible
veterans ahead of appellant, a non-veteran.  On the latter ground
appellees moved for summary judgment.  The district court granted
summary judgment.  We reverse and remand.



                              **I**

The appellant in this action is William Markel, a police officer employed by the Municipality of Penn Hills [hereinafter "Penn Hills"]. The appellees are Harry McIndoe and Penn Hills. Mr. McIndoe has been municipal manager of Penn Hills during all times relevant to this litigation. As municipal manager, he has authority over the promotions of Penn Hills police officers.

On November 4, 1986, McIndoe was arrested on a charge of operating a motor vehicle while under the influence of alcohol. Markel participated in the arrest and testified against McIndoe at a preliminary hearing held on January 27, 1987. Markel again testified against McIndoe at a related appellate hearing held on March 30, 1988. Following these proceedings, McIndoe entered and successfully completed a rehabilitation program.

Some years later — in November 1991 — Markel participated in a civil service examination, the purpose of which was to determine eligible candidates for promotion to the rank of sergeant in the Penn Hills Police Department. According to the Sergeant Candidates Eligibility List posted on December 9, 1991, Markel ranked second out of twenty-one candidates for promotion. On December 19, 1991, the person ranked third on the elibility list was promoted to sergeant. On January 17, 1992, the person ranked first was promoted. On February 2, 1992, the person originally ranked fourth was promoted.

Markel subsequently instituted this § 1983 lawsuit, contending that he had been passed over for promotion to sergeant in retaliation for his activities relating to McIndoe's arrest and court hearings. Such retaliation, he claimed, constituted a violation of his constitutional rights under the First and Fourteenth Amendments.[1] Denying Markel's allegations, appellees contended that the decisions to promote police officers other than Markel had all been made on the merits.

At some point after the completion of discovery, appellees learned of this court's decision in Carter v. City of Philadelphia, 989 F.2d 117 (3d Cir. 1993) — and, evidently, Carter led appellees to think about the Veterans' Preference Act and, in particular, the provision codified at 51 Pa. Cons. Stat. Ann. § 7104(b). Section 7104(b) reads as follows:

> Whenever any soldier [i.e. veteran] possesses the requisite qualifications, and his name appears on any eligible or promotional list, certified or furnished as the result of any such civil service examination, the appointing or promoting power in making an appointment or promotion to a public position shall give preference to such soldier, notwithstanding, that his name does not stand highest on the eligible or promotional list.

---

[1]. Officer Markel also contended that he was similarly denied transfers to other, non-civil service, positions.

51 Pa. Cons. Stat. Ann. § 7104(b) (1976).[2]  After reviewing the lists of those police officers certified as eligible for promotion to sergeant, appellees moved for summary judgment. Their argument — which the magistrate judge found persuasive — was that, although § 7104(b) concededly played no actual role in appellees' decisions relating to Markel, § 7104(b) would in any event have prohibited appellees from promoting Markel ahead of any eligible veterans.  According to the findings of the magistrate judge, fourteen of the twenty-one persons on the December 9, 1991 eligibility list were veterans, including each of the persons promoted to sergeant.  In a brief order, the district judge adopted the report and recommendation of the magistrate judge.

On appeal, Markel argues that it was error to grant summary judgment.  Appellant's first and second arguments concern the interpretation and validity of § 7104(b).  Specifically, appellant contends that: (1) § 7104(b), properly read, does not mandate the promotion of a veteran on a civil service eligibility list ahead of more qualified non-veterans; and (2) that the promotional preference contemplated by § 7104(b), if it does so mandate, contravenes the Pennsylvania Constitution and also the federal Constitution.  Alternatively, appellant contends that

---

[2].  The provision was originally enacted as part of section 4 of the Pennsylvania Veterans' Preference Act of 1945, 51 Pa. Stat. Ann. § 492.4.  That section was reenacted in 1975 as part of the Veterans' Preference Act (Chapter 71 of the Military Code) of August 1, 1975, which took effect January 1, 1976.

since § 7104(b) was not in fact an ingredient of appellees' decisions to promote other officers in preference to appellant, § 7104(b) is irrelevant to the question whether appellees trespassed on appellant's First and Fourteenth Amendment rights; in appellant's view, § 7104(b) either has no proper role in this case or should, at most, be considered only with respect to remedy.[3]  We will first turn to appellant's argument regarding the interpretation of § 7104(b).

## II

Section 7104(b) — which applies to both appointments and promotions — provides that the appointing or promoting authority "shall give preference" to any veteran whose name is on the eligible or promotional list "notwithstanding, that his name does not stand highest on the eligible or promotional list." Appellant contends that the magistrate judge — whose opinion was adopted by the district court — erred in construing the statute, pursuant to Pennsylvania case law, "as requiring the promoting power to appoint a veteran over a non-veteran." According to appellant's intepretation of § 7104(b), a non-veteran may be

---

[3].  Appellant also contends that, even if § 7104(b) precludes relief on his claim that he was wrongfully denied promotions to sergeant, he has also presented claims of wrongful denial of transfers to other, non-civil service, positions — claims which, appellant argues, are outside the ambit of § 7104(b) and were not addressed by the magistrate judge and the district court.

promoted over a veteran where "the non-veteran possesses superior individual qualifications for the promotion being sought." Appellant's Supp. Mem. of September 14, 1994, at 3. But appellant's interpretation of § 7104(b) is without support in the Pennsylvania cases.

The courts which have previously examinined § 7104(b) have construed the "shall give preference" language as a mandate that any veteran on a civil service eligibility list is to be preferred over any non-veteran on the list. Thus, in Rasmussen v. Borough of Aspinwall, 519 A.2d 1074 (Pa. Commw. Ct. 1987), appeal granted, 533 A.2d 94 (Pa. 1987)[4] — a case on which the magistrate judge relied — the Commonwealth Court reversed the Court of Common Pleas' determination that § 7104(b) did not require the appointment of the only veteran on the certified list. As stated by the Commonwealth Court, "[w]hile [§ 7104(c)] permits Borough Council to select a veteran who is not among the three highest scoring applicants by using the word 'may,' Section 7104(b), by use of the imperative 'shall,' commands Council to appoint the certified veteran if he or she is one of three on the certified list." 519 A.2d at 1076. See also G. Gordon Brickhouse v. Spring Ford Area School Dist., 625 A.2d 711, 715 (Pa. Commw. Ct. 1993) ("[Section 7104(b)] is to be applied in the same manner as the preference in Section 7104(a) — the qualified

_____

[4]. Upon inquiry to the administrative office of the Pennsylvania Supreme Court, we were informed that the appeal in Rasmussen was discontinued on March 9, 1988.

veteran must be awarded the position, even if he or she stands lowest on the list."), rev'd on other grounds, 656 A.2d 483 (Pa. 1995); Feinerman v. Jones, 356 F. Supp. 252, 257 (M.D. Pa. 1973) (interpreting the identically-worded precursor to § 7104(b) in the appointments context) ("It is true that under Section 4 of the Act, if one of the three names is a veteran, he must be given an absolute preference . . . .").[5] To be sure, each of the cases just cited arose in the context of appointments, not promotions; but the phrase "shall give preference" comprehends both appointments and promotions, and the Pennsylvania case law offers no ground for reading the same words as mandatory in one setting and non-mandatory in another. Indeed, in a recent promotion case arising under § 7104(b), the Allegheny Court of Common Pleas looked to the appointments cases as controlling authority compelling an absolute preference for any veterans, as against

---

[5]. This interpretation is buttressed by the Pennsylvania Supreme Court's opinion in Commonwealth ex rel. Graham v. Schmid, 3 A.2d 710 (Pa. 1938) —— a case discussed in further detail in part III of this opinion. Schmid addressed, inter alia, a veterans' preference law requiring that "[a]mong those persons possessing qualifications and eligibility for appointment, preference in appointment shall be given to honorably discharged soldiers and sailors who served in the Army or Navy of the United States during time of war." 3 A.2d at 702 n.1 (quoting § 4407 of the Third Class City Law of June 23, 1931). The Schmid Court interpreted the language as conferring an absolute preference: "The provision that those in the first four of the eligible list shall be preferred, appearing in the same section, must . . . be construed to be mandatory, with the exception that the appointing power need not select such veteran if it is found on a fair basis that he is morally or physically unfit to be employed." Id. at 706 (emphasis added by Schmid court).

any non-veterans, on the promotional list.  <u>City of Pittsburgh v.</u> <u>Fraternal Order of Police, Fort Pitt Lodge No. 1</u>, No. GD94-017598 at 14 (Ct. C.P. Allegheny County Nov. 9, 1994) ("Pennsylvania appellate court case law holds that § 7104(b) mandates that the qualified veteran be awarded the position, even if he or she stands lowest on the eligibility list.").

We see no reason to depart from this interpretation. We conclude that § 7104(b) ── considered apart from constitutional objections ── requires the promotion of any veteran on the eligibity list over any non-veteran.

**III**

Having determined that § 7104(b) contemplates a mandatory promotional preference for veterans over non-veterans, we now turn to the question whether, as so construed, § 7104(b) offends the Pennsylvania Constitution.

<u>A. The Validity under the Pennsylvania Constitution of Veterans'</u> <u>Preference Statutes that Antedated the Present Statute</u>

In order to put this state constitutional claim in doctrinal context, we begin our analysis by referring to decisions of the Pennsylvania Supreme Court construing statutory schemes which preceded the current Veterans' Preference Act.

Almost sixty years ago, in <u>Commonwealth ex rel. Graham</u> <u>v. Schmid</u>, 3 A.2d 701 (Pa. 1938), the Pennsylvania Supreme Court

considered constitutional challenges to two provisions of the Third Class City Law of June 23, 1931. Section 4405, 53 P.S. § 12198-4405 — one of the two challenged provisions — directed that whenever any honorably discharged war veteran who was a candidate for appointment or promotion:

> shall take any examination for appointment or promotion, his examination shall be marked or graded fifteen per centum perfect before the quality or contents of the examination shall be considered. When the examination of any such person is completed and graded, such grading or percentage as the examination merits shall be added to the aforesaid fifteen per centum, and such total mark or grade shall represent the final grade or classification of such person and shall determine his or her order of standing on the eligible list.

The other challenged provision — Section 4407, 53 P.S. § 12198-4407 — (1) <u>required</u> municipal authorities to give a preference, in making appointments to the jobs in question, to any honorably discharged war veterans who, having passed a prescribed civil service examination, were among the top four persons on the eligible list, and (2) <u>authorized</u> the appointing authorities to extend a preference to veterans with a passing grade even if they were not among the top four.

The litigation that came before the Pennsylvania Supreme Court was triggered by the action of the City of Erie in appointing to the post of assistant building-inspector a non-veteran, Joseph A. Schmid. Schmid stood highest among the fifteen persons certified as achieving a passing grade of 70.0 or

better on the civil service examination.  Schmid's grade was 94.2.  James J. Leach, a veteran, was second:  his grade — with the aid of the fifteen percent bonus mandated by § 4405 — was 92.4.  Stephen P. Markham, also a veteran, was fourth: his grade — with the aid of the fifteen-percent bonus — was 83.0; without the bonus Markham would not have achieved a passing grade.  When Schmid was appointed assistant building-inspector, Leach and Markham instituted quo warranto proceedings in the Court of Common Pleas.  Losing in that court, they appealed to the state's highest court.

The questions addressed by the Pennsylvania Supreme Court were whether, in the context of appointment to a municipal position, § 4405 — adding fifteen-percent to a veteran's civil service score — and § 4407 — requiring a preference for a veteran among the top four successful examinees, and permitting a preference for other veterans who had passed the examination — offended Article III, Section 7 of the Pennsylvania Constitution which, at that time, barred the General Assembly from "pass[ing] any local or special law . . . [g]ranting to any corporation, association, or individual any special or exclusive privilege or immunity . . . ."  Speaking through Chief Justice Kephart, the court ruled unanimously that (1) § 4407's mandatory preference for a veteran listed among the top four successful examinees was valid, but (2) § 4405's fifteen percent bonus for all veterans,

including those who without the bonus did not achieve a passing grade, was invalid.

En route to reaching these conclusions, Chief Justice Kephart canvassed numerous cases in other jurisdictions assessing similar statutes:

> The underlying principle in all cases is that to sustain any preference the veteran must possess the minimum qualifications to perform the duties involved. . . . The theory on which the cases are decided is that, while it may be perfectly lawful to prefer veterans, there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties. . . .
>
> As a basis for appointment it is not unreasonable to select war veterans from candidates for office and to give them a certain credit in recognition of the discipline, experience and service represented by their military activity. No one should deny that these advantages are conducive to the better performance of public duties, where discipline, loyalty, and public spirit are likewise essential. The fact that veterans either through voluntary enlistment or conscription have been to wars for the preservation of their country should be given some consideration. It is the greatest service a citizen can perform, and it comes with ill grace for those of us not in such wars to deny them just consideration. Where the preferences reasonably and fairly appraise these advantages, there can be no question of illegal classification and arbitrary privilege. But, on the other hand, where war service is appraised, in the allotment of public positions, beyond its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and

the privilege is held unreasonable and
arbitrary.

3 A.2d at 704.  From these premises, illuminated by extensive
reference to the case law in other states, it followed that:

> There can be no objection to the provision
> of section 4407 which _permits_ a preference of
> any veteran on the eligible list.  The
> provision that those in the first four of the
> eligible list _shall be preferred_, appearing
> in the same section, must, however, be
> construed to be mandatory, with the exception
> that the appointing power need not select
> such veteran if it is found on a fair basis
> that he is morally or physically unfit to be
> employed.  Thus construed it is
> constitutional under all the cases which have
> been cited.  In none of those was a mandatory
> preference for veterans who had passed the
> examination held unconstitutional.
>
> But statutes completely exempting veterans
> from taking the customary examinations for
> civil service positions have been ordinarily
> held unconstitutional since they do not
> require the appointees be fit for the
> position. . . .
>
> . . . .
>
> It therefore clearly appears that the
> decisions of other states condemn the
> provision of section 4405 giving fifteen
> percent credit in advance to veterans as
> unconstitutional.  It is not distinguishable
> from a statute which would allow a fifteen
> percent lower passing grade for veterans.  It
> gives undue weight to the military and public
> experience of the veterans and in that way
> constitutes a special and exclusive
> privilege.

_Id._ at 706-07 (emphasis in original).

Accordingly, the court reversed the judgment of the trial court; since § 4407 was valid, and Leach was found to rank among the top four successful examinees even without the flawed fifteen-percent bonus, the trial court on remand was directed to enter judgment ordering the removal of Schmid and also ordering the appointment of Leach, unless Leach was found to be physically or morally unfit.

A year after Schmid, the Pennsylvania Supreme Court, in Carney v. Lowe, 9 A.2d 418 (Pa. 1939), addressed another controversy arising in Erie under the Third Class City Law. This time the issue was the propriety of including, on the list of persons certified as eligible for appointment, fifteen veterans, all of whom (1) had passed the required civil service examination but (2) were older (they ranged in age from thirty-seven to forty-four) than the age ceiling for initial appointment as a police officer — namely, the age of thirty-five — prescribed by the civil service board. The inclusion of the veterans was deemed to be justified (or perhaps mandated) by the final sentence of § 4407: "Such [preferential] appointment of soldiers, sailors and marines may be made without regard to any age limitations now provided for by law or the rules and regulations of any board or commission having in charge civil service regulations in any county, city or borough."

On application of fifteen non-veterans who had passed the civil service examination, the Court of Common Pleas ordered

that the names of the fifteen veterans be removed from the eligible list.  In a unanimous ruling the Pennsylvania Supreme Court affirmed.  Speaking through Justice Horace Stern, the court found the issue to be controlled by the previous year's ruling in Schmid.  Applying Schmid, the Court said:

> To require that an applicant for a position in the police department be below a certain age is the prescription of a qualification for eligibility.  To permit war veterans to be appointed even though above such maximum is not the mere granting to them of a preference if otherwise eligible but the setting up for them of a standard of eligibility different from that established for other applicants.  Therefore it is clear that the permitted waiver of the age limit provided by section 4407 is unconstitutional.

9 A.2d at 420.

In a footnote to his opinion in Carney v. Lowe, Justice Stern pointed out that the legislature had, on June 27, 1939, passed a new statute intended, according to section 5, 51 Pa. Stat. Ann. § 491.5, to serve as "'the exclusive law applying to the Commonwealth and its political subdivisions in giving preference to soldiers in appointment to public position.'"  Id. at n.2.  Six years later, in the spring of 1945, with the end of World War II in sight, the legislature enacted the Veterans' Preference Act of May 22, 1945, which replaced the 1939 statute. The 1945 statute became the focus of Commonwealth ex rel. Maurer v. O'Neill, 83 A.2d 382 (Pa. 1951), a further examination of the constitutionality of veterans' preference statutes.  The

Pennsylvania Supreme Court has not addressed the constitutionality of such statutes since O'Neill.

While Schmid and Carney v. Lowe dealt with initial appointment to public office, O'Neill dealt with promotion — the process at issue in the case at bar. The focus of O'Neill was Section 3 of the Veterans' Preference Act of May 22, 1945, which provided as follows:

> Whenever any soldier [i.e. veteran] shall successfully pass a civil service appointment or promotional examination . . . such soldier's examination shall be marked or graded an additional ten points above the mark or grade credited for the examination and the total mark . . . thus obtained . . . shall determine his standing on any eligible or promotional list, certified or furnished to the appointing or promoting power.

In 1949, the Fire Bureau of the City of Philadelphia conducted a civil service examination for promotion to the rank of captain. George Braden, a non-veteran, achieved a passing grade of 79.59. Among the other officers who passed the examination were certain veterans who, with the aid of the "additional ten points" called for by Section 3 of the Veterans' Preference Act, achieved scores of 81.47 to 88.05. In consequence, the veterans were promoted to captain and Braden was not. Braden then brought a quo warranto proceeding in the Court of Common Pleas, challenging the constitutionality of Section 3. Losing in the trial court, Braden appealed to the Pennsylvania Supreme Court. That court reversed the judgment of the Court of

Common Pleas and directed that the several challenged promotions be rescinded.

The opinion in O'Neill was delivered by Chief Justice Drew. The core of the court's holding is contained in the following paragraphs:

> At the outset it is conceded that the granting of a preference in the case of original appointments is constitutional. That question was decided in Commonwealth ex rel. Graham v. Schmid, 333 Pa. 568, 3 A.2d 701, 120 A.L.R. 777. We there laid down the test to be used in determining such cases, stating 333 Pa. at p. 573, 3 A.2d at page 704: ". . . there must be some reasonable relation between the basis of preference and the object to be obtained, the preference of veterans for the proper performance of public duties. Public policy, as well as constitutional restrictions, prohibits an unrestrained preference as it does a preference credit based on factors not representative of their true value."

> When we apply that test to the facts of this case, we can come only to the conclusion that, because of the difference between an original appointment and a promotion, the award of the ten percentage point preference to veterans in examinations for promotions is unreasonable and therefore unconstitutional. In the Schmid case, Mr. Chief Justice Kephart pointed out that preferences to veterans in appointments to public office are reasonable because the discipline, experience and service represented by the veterans' military activity makes them more desirable applicants for public positions where discipline, loyalty and public spirit are essential, than those who have not served in one of our military organizations. But, the former Chief Justice qualified the right of the legislature to grant such preferences when he added that "where war service is appraised, in the allotment of public positions, beyond

its value, and the preference goes beyond the scope of the actual advantages gained in such service, the classification becomes void and the privilege is held unreasonable and arbitrary."  We do not doubt but that the military training received by veterans during the course of their service renders them superior candidates for public offices of the nature now under consideration.  However, we are convinced that the legislature, in authorizing the addition of ten percentage points to the veterans' final examination marks in all competitive examinations for higher positions that the original appointments, has placed far too high a value on the benefit to the public service of the military training of veterans.  In the case of an original appointment, the training a veteran has received in the armed forces will, no doubt, make him more amenable to the following of orders, the observance of regulations and, in other ways, tend toward making him a desirable employee.  But the advantages to the public of this training are not absolute and, as time passes, the proportional benefit accruing to the public from the employment in such a service of veterans in preference to non-veterans gradually diminishes as both become proficient in the performance of their duties.  In determining who is to be awarded a promotion, the skill of the particular examinees in the performance of their tasks is the prime consideration and compared to it the training gained by veterans solely as a result of military service becomes of very little importance.  To credit veteran examinees in examinations for successive promotions with the same total of gratuitous percentage points as in the instance of their original appointment to a public position is, therefore, a totally unjustified appraisal of the value of their military training and highly prejudicial to the public service.

. . . .

> It follows from what has been said that the Veterans Preference Act, in granting the same preference to veterans in examinations for promotions as is granted in their original appointments to a public office is unreasonable and class legislation and therefore unconstitutional.

83 A.2d at 382-84.[6]

## B. The Present Statute

The present veterans' preference statute — the statute of which § 7104(b) is a part — is the Veterans' Preference Act of August 1, 1975, which took effect on January 1, 1976. On June 15, 1976, the Attorney General of Pennsylvania issued Opinion No. 76-17. That Opinion addressed the constitutionality of the two provisions of the present statute which are derived from — and, indeed, in their effective operative language, are verbatim continuations of — the statutory provisions considered in Schmid and O'Neill. One of the two provisions addressed by the Attorney General was current § 7103(a), which adds ten points to the examination score of a veteran who "shall successfully pass a civil service appointment or promotional examination." The other provision addressed by the Attorney General was current § 7103(b), which directs that a veteran's examination "shall be marked or graded 15% perfect before the quality or contents of

---

[6]. Justice Allen Stearne, joined by Justices Horace Stern and Grover Ladner, dissented; the dissenters found no difference of constitutional magnitude between an original appointment and a promotion.

the examination shall be considered."  With respect to § 7103(a),
the Attorney General characterized O'Neill's assessment of the
virtually identical provision in the 1945 Veterans' Preference
Act as a holding that the provision "was unreasonable and class
legislation insofar as it attempted to grant veterans a 10 point
preference on promotion examinations."  Opinions of the Attorney
General of Pennsylvania, No. 76-17, at 54 (1976).  With respect
to § 7103(b), the Attorney General characterized Schmid's
assessment of the virtually identical provision of the 1931 Third
Class City Law as a holding "that a credit to veterans of points
to aid them in passing civil service examinations is
unconstitutional," a holding "reaffirmed by the [Pennsylvania]
Supreme Court in Carney v. Lowe."  Id. at 55.  The Attorney
General then stated:

> The Statutory Construction Act of 1972,
> provides "that when a court of last resort
> has construed the language used in a statute,
> the General Assembly in subsequent statutes
> on the same subject matter intends the same
> construction to be placed upon such
> language."  1 Pa. C.S. § 1922(4).  Thus,
> reenactment continues the prior law,
> including all judicial construction thereof.
> Consequently, the two provisions in question
> are still unconstitutional.

Id.


Like §§ 7103(a) and (b), discussed in the Attorney
General's 1976 Opinion, § 7104(b) — the statutory provision
involved in the case at bar, directing the "appointing or
promoting power" to "give preference" to a veteran whose name

appears "on any eligible or promotional list . . . notwithstanding, that his name does not stand highest on the eligible or promotional list" — was drawn essentially verbatim from antecedent veterans' preference legislation.[7]  Presumably, the fact that the Attorney General did not mention § 7104(b) in his 1976 Opinion traces to the fact that § 7104(b)'s statutory ancestor was not discussed in Schmid, Carney v. Lowe, or O'Neill. In 1993, when this court, in Carter v. City of Philadelphia, 989 F.2d 117 (3d Cir. 1993), had occasion to consider § 7104(b) — holding that Philadelphia's Civil Service Regulations were preempted by the state statute — we noted that "[t]he constitutionality of the preference of § 7104(b) or its prior identical provision in 51 P.S. § 492-4 is not before us, nor does it appear, historically, to have ever been challenged on these grounds before the Commonwealth's appellate courts."  Id. at 121 n.5.[8]

The question not before the Carter court is presented by the case at bar.  In examining that question, we first inquire whether — given that the Pennsylvania Supreme Court has not had occasion to assess the constitutionality of veterans' preference statutes for over forty years — the constitutional framework

[7].  See note 2, supra.

[8].  Subsequent to Carter, the constitutionality of § 7104(b), as applied in a promotional context, was addressed by Judge Wettick of the Allegheny County Court of Common Pleas.  On the authority of O'Neill, Judge Wettick held that in a promotional context § 7104(b) is unconstitutional.  See note 13, infra.

erected by that court starting in the late 'thirties and continuing into the 'fifties is still in place.

It was in 1975 that the Attorney General of the Commonwealth — looking back to Schmid, decided in 1938, and to the two cases which followed it, Carney v. Lowe, decided in 1939, and O'Neill, decided in 1951 — concluded that the decades-old trilogy stated enduring constitutional doctrine. Is it the case that the lapse of almost twenty years since the Attorney General rendered his Opinion has undermined the authority of Schmid and its sequelae?

Just three months ago, the Pennsylvania Supreme Court, in Brickhouse v. Spring-Ford Area School District, 656 A.2d 483 (Pa. 1995) offered strong evidence that Schmid remains a controlling precedent. Brickhouse presented a question as to the proper interpretation of § 7104(a) — a companion to § 7104(b) — which provides a "preference" in appointments and promotions to non-civil service public positions for any veteran possessing "the requisite qualifications."[9] The plaintiff in Brickhouse was a veteran who, notwithstanding that he held a valid Pennsylvania teacher's certificate, was turned down for a position teaching social studies in the Spring-Ford Area School District; in lieu of plaintiff the defendant school district hired a non-veteran.

_____

[9]. In contrast, section 7104(b) — the provision at issue in the case at bar — directs that a veteran certified via a civil service examination as qualified for appointment or promotion shall be given "preference . . . notwithstanding, that his name does not stand highest on the eligible or promotion list."

The plaintiff's position was "that to be qualified to teach in Pennsylvania, the only requirements are that one be of sound moral character, over eighteen years of age and be certified to teach by the Commonwealth, and that once he is qualified, he must be awarded the job." Id. at 486. The school district's position was "that although Brickhouse was certified to teach in Pennsylvania, he was not qualified to teach in this particular school district, where high academic performance, outstanding recommendations, and current references were required." Id. at 485.

In rejecting Brickhouse's claim to a statutory preference, the court turned for guidance to Schmid, which it characterized as "[t]he landmark case in the area." Id. at 486. Relying upon the analysis the court had found persuasive in Schmid, the court in Brickhouse defined "qualified" as the "ability to perform the job at the level of skill and with the expertise demanded by the employer," id. ── and not, as Brickhouse urged, as "eligibility to be considered for the position," id. at 487. Based upon this understanding of the word "qualified," the court found that "there is no doubt that the school district's criteria for employment were rationally related to the job and that Brickhouse's credentials did not qualify him for the job." Id. at 487-88. The court thus used Schmid as the

basis for a restrictive interpretation of the veterans'
preference afforded by § 7104(a).[10]

---

[10]. The Brickhouse court briefly discussed the fact that the
constitutional provision upon which Schmid had relied — former
Article III, section 7 — had been repealed. That section
prohibited "any local or special law . . . [g]ranting to any . .
. individual any special or exclusive privilege or immunity."
(Article 3, section 32, the current constitutional provision
barring the enactment of a "local or special law in any case
which has been or can be provided for by general law," has not
retained the "special or exclusive privilege or immunity"
language, but similar language is to be found in Article 1,
section 17, which provides that "[n]o ex post facto law, nor any
law impairing the obligation of contracts, or making irrevocable
any grant of special privileges or immunities, shall be passed.")
The Brickhouse court noted that "[i]n 1967, this [Article III,
section 7] language was deleted from the constitution by
amendment," and then went on to observe:

> However, Schmid is also grounded on
> constitutional principles sounding in due
> process and equal protection:
>
> > [Veterans'] preferences have been
> > considered by the courts under
> > constitutional prohibitions against
> > special privileges and unreasonable
> > classification, and while the
> > constitutional provisions differ
> > somewhat in the various
> > jurisdictions, they are similar in
> > that all permit reasonable
> > classifications and prohibit
> > unreasonable ones and arbitrary
> > privileges

Brickhouse, 656 A.2d at 486 (quoting Schmid, 3 A.2d at 704)
(emphasis added by Brickhouse court).
     The Pennsylvania Constitution's equal protection guarantees
are understood to reside in Article 1, section 26 and Article 3,
section 32. Article 1, section 26 provides: "Neither the
Commonwealth nor any political subdivision thereof shall deny to
any person the enjoyment of any civil right, nor discriminate
against any person in the exercise of any civil right." Article
3, section 32 prohibits the General Assembly from passing any

Since the Pennsylvania Supreme Court has so recently underscored Schmid's validity — and, in particular, the limitations it sets forth on veterans' preferences — it seems probable that O'Neill, which applied the principles of Schmid to promotions, would also be regarded by that court as a precedent that offers reliable guidance.[11]  It will be recalled that in

(..continued)
"local or special law in any case which has been or can be provided for by general law," and specifically prohibits local or special laws in eight enumerated categories.  Where neither suspect or "sensitive" classifications nor fundamental or "important" rights are involved, the equal protection guarantees have been intepreted to require that any distinction created by the legislation be "'reasonable, not arbitrary'
" and "'rest[] upon a difference having a fair and substantial relation to the object of the legislation.'"  Commonwealth v. Parker White Metal Co., 515 A.2d 1358, 1365 (Pa. 1986) (quoting Snider v. Thornburgh, 436 A.2d 593, 597 (Pa. 1981)).  Similarly, the Pennsylvania Supreme Court has recognized that state substantive due process guarantees prohibit laws which are "'unreasonable, unduly oppressive or patently beyond the necessities of the case,'" or which employ means without a "'real and substantial relation to the objects sought to be attained.'" Laudenberger v. Port Authority of Allegheny County, 436 A.2d 147, 156 (Pa. 1981) (quoting Gambone v. Commonwealth, 101 A.2d 634, 637 (Pa. 1954)), appeal dismissed, 456 U.S. 940 (1982).  (The source of the state substantive due process guarantees, while frequently not identified in the caselaw, appears to be Article 1, section 1.  See Pennsylvania Medical Soc'y v. Foster, 608 A.2d 633, 637 (Pa. Commw. 1992)).  Thus, the applicable legal standard set forth by current state equal protection and due process law is, like the standard applied in Schmid, one based on "reasonableness."

[11].  In predicting how the Pennsylvania Supreme Court is likely to resolve a question of Pennsylvania law, it is our practice to consider "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."  McKenna v. Ortho Pharmaceutical Corp., 622 F.2d 657, 663 (3d Cir. 1980), cert. denied, 449 U.S. 976 (1980).  We find that the Brickhouse court's heavy reliance on Schmid, its consideration of the relevant constitutional

O'Neill the court considered the constitutionality of awarding a
(..continued)
principles underlying Schmid, and, in particular, its willingness
to use Schmid as a springboard for a restrictive interpretation
of the term "requisite qualifications" in § 7104(a), offer
considerable evidence of continued allegiance to the limitations
placed on veterans' preference laws in Schmid and O'Neill ——
limitations which the Pennsylvania Attorney General, in 1976,
concluded were still in effect.

It is, of course, possible that if the Pennsylvania Supreme
Court were today to be examining veterans' preference statutes
for the first time it would adopt a standard of "reasonableness"
less demanding than that applied in Schmid and reaffirmed in
O'Neill. Two federal cases rejecting equal protection challenges
to state preferential promotions statutes would, arguably, offer
support for such a relaxed standard. Koelfgen v. Jackson, 355 F.
Supp. 243 (D. Minn. 1972), aff'd mem., 410 U.S. 976 (1973); Rios
v. Dillman, 499 F.2d 329 (5th Cir. 1974). On the other hand, the
Pennsylvania Supreme Court has shown a willingness to "carefully
scrutinize the validity" of laws implicating Article 3, section
32's specific prohibition of "any local or special law . . .
[r]egulating labor, trade, mining, or manufacturing." Kroger Co.
v. O'Hara Township, 392 A.2d 266, 274 (Pa. 1978). In Kroger, the
court noted that "[w]hile there may be a correspondence in
meaning and purpose between [the federal and state equal
protection guarantees], the language of the Pennsylvania
Constitution is substantially different from the federal
constitution. We are not free to treat that language as though
it were not there." Id. After deriving from Article 3, section
32 a "duty to carefully examine any law regulating trade," id.,
the court went on to hold that Pennsylvania's scheme of Sunday
trading laws was unconstitutional —— despite United States
Supreme Court precedent suggesting a more permissive approach.
Since the veterans' preference statute is a law "regulating
labor," the Pennsylvania Supreme Court could, in consonance with
Kroger, conclude that a similar, more searching, examination
should be applied to statutes providing veterans' promotional
preferences.

However, speculation about how the Pennsylvania Supreme
Court might proceed were it addressing veterans' preference
statutes for the first time need not detain us. The court has,
in fact, had occasion to consider statutes of this sort in
several cases over a space of nearly sixty years. Brickhouse
shows that the current court continues to look for guidance to
the Schmid-O'Neill jurisprudence. We see no reason to anticipate
that the court will jettison that jurisprudence.

ten-point bonus to veterans who had passed a promotional examination for the position of fire captain.  The court held that such a bonus — placing the veterans higher on the certified list than the non-veteran plaintiff — would have been permissible at the initial appointment stage but was not constitutionally supportable at the promotional stage:  "the advantages to the public of this [military] training are not absolute and, as time passes, the proportional benefit accruing to the public from the employment . . . of veterans in preference to non-veterans gradually diminishes as both become proficient in the performance of their duties" and "[i]n determining who is to be awarded a promotion, the skill of the particular examinees in the performance of their tasks is the prime consideration and compared to it the training gained by veterans solely as a result of military service becomes of very little importance."  83 A.2d at 383.

In O'Neill, the veterans' preference held to be unconstitutional was contingent in that a veteran on the certified list had to score within ten points of a competitor non-veteran to lay claim to the promotion.  By contrast, § 7104(b) confers upon every veteran on the certified list a promotional "preference . . . notwithstanding, that the veteran's name does not stand highest on the . . . list."[12]  We conclude

_____

[12].  In Carter we noted that, although the plaintiff "interchangeably posit[ed] a secured property right in both a 'preference in promotion' and a 'promotion' . . . [t]he Pennsylvania statute clearly bequeaths only the lesser right —

that in light of the Pennsylvania Supreme Court's willingness to invalidate the more limited preference scheme in O'Neill, that court would hold § 7104(b)'s absolute promotional preference to be unconstitutional as "'unreasonable' and 'class legislation.'" O'Neill, 83 A.2d at 384.[13]

In sum, we conclude that, if the issue were to come before the Pennsylvania Supreme Court, that court would hold that, in the context of promotions, the veterans' preference contemplated by § 7104(b) is incompatible with the Pennsylvania

(..continued)
that of a preference in promotion — and not an unequivocal right to a promotion to a sergeant's position because of his veteran's status." 989 F.2d at 119 n.4. The "lesser right" — not a right to require that a promotional vacancy be filled but a right to "preference" if the vacancy is filled — is, of course, sufficient to defeat the claim of any qualified non-veteran.

[13]. The point is made succinctly in the one Pennsylvania case of which we are aware that has addressed the constitutionality of the promotional preference contemplated by § 7104(b). In City of Pittsburgh v. Fraternal Order of Police, Fort Pitt Lodge No. 1, No. GD94-017598 (Ct. C.P. Allegheny County Nov. 9, 1994), Judge Wettick put the matter as follows:

> If a statutory provision which only awards ten points to veterans who have passed a promotional examination violates the Pennsylvania constitutional provision prohibiting the grant of special privileges, a legislative provision that automatically moves a veteran who passed the examination to the top of the promotional list gives greater weight to military service and, thus, is a more egregious violation of this constitutional provision.

City of Pittsburgh, slip op. at 14.

Constitution.[14] Under these circumstances, the appellees could not properly rely on § 7104(b) as a ground for denying appellant a promotion. Thus, § 7104(b) was not a legally cognizable defense against appellant's § 1983 claim.

## Conclusion

For the reasons given in part III of this opinion, the district court's grant of summary judgment was in error. Accordingly, the judgment of the district court is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

---

[14]. Appellant also contends that "for those same reasons as set forth in O'Neill, the Act [§ 7104(b)] would violate the Equal Protection Clause and Due Process clauses [sic] of the United States Constitution as the Act would not be reasonably related to any legislative purpose." Brief of Appellant at 20. Appellees disagree, citing Hooper v. Bernalillo County Assessor, 472 U.S. 612 (1985). Since we find § 7104(b), as applied to promotions, is inconsistent with the Pennsylvania Constitution, there is no need for us to address the federal constitutional question. We also need not consider appellant's claim that appellees' ex post facto invocation of § 7104(b) should either have been wholly disregarded or treated in a manner similar to after-acquired evidence of employee misconduct. See McKennon v. Nashville Banner Publishing Co., 115 S. Ct. 879 (1995); see also Mardell v. Harleysville Life Ins. Co., 31 F.3d 1221 (3d Cir. 1994), vacated and remanded for further consideration in light of McKennon, 115 S. Ct. 1397 (1995).